Law Office of James McGee, PLC
Steven Parnell Weaver
CA Bar #243000
325 W. Hospitality Lane, Suite 212
San Bernardino CA 92408
steven@mcgeeplc.com
909-571-5599

UNITED STATES CENTRAL DISTRICT COURT

STATE OF CALIFORNIA

| | |
|---|---|
| ANTHONY CORNELIUS HARRUS,<br><br>          PLAINTIFF,<br>vs.<br><br>CITY OF FONTANA POLICE OFFICERS: KEVIN ANDERSON, JULIO LANDAVERDE, KEVIN GOLTARA, SAMUEL SAENZ<br><br>          DEFENDANTS | Case No.:<br>COMPLAINT FOR DAMAGES:<br><br>- **42 U.S.C. Section 1983 and 1988:**<br>- Excessive Force;<br>- Failure to Intervene<br>- Malicious Prosecution/ Destruction of Evidence;<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF ACTION

1.     This Complaint is an action for money damages brought pursuant to

42 U.S.C. Sections 1983 and 1988, the Fourth and Fourteenth

Amendment of the United States Constitution against the City of

1

FONTANA Police Officers Kevin Anderson and Julio Landaverde, Kevin Goltara and Samuel Saenz inclusive, and hereby allege as follows.

## **PRELIMINARY STATEMENTS**

2. This civil rights action seeks compensatory and punitive damages for serious physical injuries sustained by Plaintiff Anthony Cornelius Harris ("HARRIS" or "PLAINTIFF") when he was attacked and beaten by City of Fontana Police Department Officers on Date April 29, 2020.

3. The beating was excessive and unreasonable, particularly because HARRIS posed no immediate threat of death or serious bodily injury to any person at the time of the attack and was unarmed, compliant and had his hands behind his back walking slowly backwards towards officers, as commanded, while submitting to the officers' authority.

4. As a result of the beating, HARRIS endured pain and suffering, false charges, and subsequent false arrest on the charges.

5. HARRIS also experienced and continues to experience mental and emotional distress from the physical injuries and feels stress and anxiety whenever he sees members of law enforcement. As a result of the beating, HARRIS has incurred medical expenses and expects to incur future medical expenses including therapy and counseling.

Complaint for Damages

## JURISDICTION AND VENUE

6.     This case arises under 42 U.S.C. § 1983 and 1988 as well as under California law. This court has subject matter jurisdiction over PLAINTIFF's federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the City and the County of San Bernardino, California.

8.     The formal grievance process was exhausted by HARRIS. Notice of a claim was presented by HARRIS to the City of San Bernardino and was denied.

9.     On September 2, 2022, Harris filed a petition for relief from the State claim statute.

10. On February 14, 2023, the State Court denied the petition for relief as untimely.  While criminal charges were pending and civil prosecution was tolled under Government Code Section 945.3, the filing period of a claim is not similarly extended.

3

11. In California the statute of limitations for section 1983 actions is tolled by Cal. Gov't Code § 945.3 while criminal charges are pending and therefore this claim is filed within Federal Court statute of limitations.

12. Because California does not provide any remedy for an aggrieved malicious prosecution victim to sue public employees for the filing and/or procurement of a bogus criminal action [due to immunity under Cal. Gov't Code § 821.6], pursuant to Parratt v. Taylor, 451 U.S. 525 (1981), the actions of said defendants also constituted a violation of the plaintiff's rights under the Fourth Amendment.

## **PARTIES**

13.     At all relevant times, PLAINTIFF was and is an individual residing in the County of San Bernardino, California.

14.     Defendants were police officers working for the City of FONTANA Police Department ("DEPT") at the time of this incident.

15.     Kevin Anderson (ANDERSON) was acting under color of state law and within the course and scope of his employment with the City of FONTANA ("CITY") and its DEPT when he used excessive force against HARRIS.

16.     Julio Landaverde (LANDAVERDE) was acting under color of state law and within the course and scope of his employment with the City of

4

FONTANA ("CITY") and its DEPT when he may have used excessive force against HARRIS and failed to intervene in other officers' use of excessive force.

17. Kevin Goltara (GOLTARA) was acting under color of state law as a sergeant and within the course and scope of his employment with the City of FONTANA ("CITY") and its DEPT when he may have used excessive force against HARRIS and failed to intervene in other officers' use of excessive force.

18. Samuel Saenz (SAENZ) was acting under color of state law and within the course and scope of his employment with the City of FONTANA ("CITY") and its DEPT when he may have used excessive force against HARRIS and failed to intervene in other officers' use of excessive force.

19. ANDERSON, LANAVERDE, GOLTARA and SAENZ together will be referred to as DEFENDANTS.

20. DEFENDANTS were acting with the complete authority and ratification of his principal, CITY, at all relevant times.

21. On information and belief, DEFENDANTS are residents of the County of San Bernardino.

5

22.   At all relevant times, CITY is and was a duly organized public entity, form unknown, existing under the laws of the State of California.

23.   CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the FONTANA Police Department and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the San Bernardino Police Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, the CITY was the employer of DEFENDANTS.

24.   In doing the acts and failing and omitting to act as hereinafter described, DEFENDANTS were acting on the implied and actual permission and consent of the CITY.

25.   DEFENDANTS are sued individually and in their official capacities as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for the DEPT and CITY.

Complaint for Damages

26.   PLAINTIFF suffered injuries as a direct and proximate result of the actions of DEFENDANTS. DEFENDANTS are directly liable for PLAINTIFF's injuries and damages under federal law pursuant to 42 U.S.C. § 1983.

27.   CITY is on notice of the possible addition of Monell claims being filed if discovery so directs.

## STATEMENT OF FACTS GIVING RISE TO THE PLAINTIFF HARRIS' CAUSES OF ACTION

28.   PLAINTIFF re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

29.   According to reports written by the DEFENDANTS, on or about April 27, 28th, 29th or 30th 2020, depending on which report you want to believe, officers received a report that HARRIS stole a white Hyundai Elantra and was armed and dangerous.

30.   GOLTARA located the allegedly stolen vehicle parked in a parking stall behind 9261 Wheeler court unoccupied.

31.   GOLTARA called for backup. Officers congregated at a nearby 7-Eleven to discuss safety protocols before attempting to apprehend Harris. As officers conversed, they saw the allegedly stolen vehicle

headed from Wheeler Ct., make a U-turn, and then head back towards Wheeler Ct. Officers pursued.

32.   As officers caught up to Harris, Harris attempted to park in a parking stall. Officers noticed the driver's door was open, HARRIS was sitting in the driver's seat and Cheryl Garcia was sitting in the passenger seat.

33.   Police reports further state that, with his firearm drawn, officer GOLTARA approached the vehicle.

34.   Harris was instructed to get out of the vehicle with his hands up and he complied.

35.   HARRIS got out of the vehicle and put his hands up.

36.   HARRIS walked backwards towards the officers as he was instructed to do with his hands behind his back so they could see them.

37.   The walk back to the police officers was approximately 10 or more feet.

38.   Officers instructed HARRIS to get down on the ground, which he immediately complied.

39.   While HARRIS was complying, several officers rushed in and began grabbing him.

8

40. LANDAVERDE admits in his report that he shoved Harris down on the ground, struck him 3 times on the right side of his face with his fist, and struck him one time with his right foot to his "torso".

41. SAENZ was present and failed to intervene in the beating of HARRIS.

42. GOLTARA was present as a sergeant and failed to intervene in the beating of HARRIS.

43. ANDERSON was present and failed to intervene in the beating of HARRIS.

44. SAENZ says that "he pulled out a taser, instructed that he would be firing the taser so that officers cleared the area, and Harris laid his arms out to his side, allowing Harris to be arrested without further incident."

45. The video contradicts SAENZ's version of events.

46. According to the video obtained by the defense and contradictory to the police reports, HARRIS complies with the officers' commands, and he is seen slowly walking backwards toward them with his hands clearly behind his back.

47. As HARRIS gets closer to the officers, he complies with their commands and he gets to his knees and he is promptly beaten by the officers and kicked in the head. There was no provocation by HARRIS before the officers attacked him.

9

48. According to the police reports, Harris had a 1-inch laceration to his left eyebrow, a bump above his left eye, a bloody nose, a slightly swollen left eye, and scrapes on his knuckles.

49. According to LANDAVERDE, HARRIS was only taken to Arrowhead Regional Medical Center because LANDAVERDE had suffered a hand injury.

50. LANDAVERDE's hand injury was caused by beating HARRIS.

51. None of the DEFENDANTS mention HARRIS getting kicked in the head.

52. GOLTARA was approving officer for **ALL** of the DEFENDANT's police reports, including his own.

53. Photos were taken of Harris's injuries and entered into evidence.

54. On May 1, 2020, the San Bernardino County District Attorney filed a complaint charging defendant Anthony Cornelius Harris with 4 counts of resisting, obstructing, or delaying a peace officer (Pen. Code, § 148 subd. (a)(1)). On May 4, 2020, Harris was arraigned via video, not guilty pleas were entered on his behalf, and a public defender was appointed.

55. On January 21, 2022, to get out of jail, Defendant entered a plea of guilty to 4 counts of resisting arrest pursuant to Section 148, subdivision

(a)(1), and was sentenced to 30 days in county jail and given 3 days of actual credit, assumably without representation by counsel.

56.    On February 15, 2022, Defendant filed a motion to withdraw the plea. Defendant had obtained counsel and counsel discovered discrepancies between police reports and the actual events that transpired on the day of the incident. On March 3, 2022, the motion was heard in front of the Honorable Michael Camber, and the motion to withdraw the plea was granted.

57.    On March 28, 2022, defense counsel submitted an informal discovery request, requesting all missing discovery items. Later that day, defense counsel received an email stating 5 of the 15 items stored on visual Labs had disappeared.

58.    The missing discovery included Body Worn Camera Video, an audio wave file, an audio file TAC.wave file, and a CAD PDF file.

59.    The unavailable evidence was essential in capturing the incident.

60.    SAENZ records footage from a nearby homeowner whose camera recorded the beating.

61.    SAENZ states in his report that the video "was mounted to high on a window and you could only see the upper half of Officers torso and not Harris."

62.   The video that we showed to the DA shows more than the top half of the officers and the recording also shows the DEFENDANTS beating HARRIS.

63.   HARRIS was able to secure video from the neighbor, however SAENZ'S recording inaccurately and misleadingly described in his report is missing from their evidence.

64.   DEFENDANTS all individually wrote a false police report.

65.   DEFENDANTS all individually wrote a misleading police report.

66.   DEFENDANTS all individually wrote an incomplete police report.

67.   LANDAVERDE only mentions a small laceration to HARRIS' face.

68.   SAENZ admits to placing a knee on HARRIS while other officers were engaging HARRIS and says he threatened to taser HARRIS. SAENZ does not mention any injuries to HARRIS in his report.

69.   GOLTARA was a sergeant at the scene and admits to observing a "struggle" but fails to provide any details other than his own threats to taser HARRIS while LANDAVERNCE is beating him and does not mention any injuries to HARRIS in his report.

70.   ANDERSON admits to physically pushing and pulling HARRIS while LANDAVERDE is beating him and he noted a 1-inch laceration to his left eyebrow, a bump above his left eye/forehead, a bloody nose and

12

swollen left eye, complaint of pain to his head and left knee area as well as scraps to HARRIS' hands.

71.     DEFENDANTS directly caused PLAINTIFF's injuries identified by ANDERSON.

72.     PLAINTIFF was arrested after the beating and was eventually charged with 4 counts of resisting arrest against each of the DEFENDANTS.

73.     PLAINTIFF never resisted arrest.

74.     PLAINTIFF was incarcerated on a charge the DEFENDANTS knew he did not commit and falsified.

75.     On June 3, 2022, the San Bernardino District Attorney's Office dismissed the 148 charges against HARRIS in the interest of justice after the video of the incident was shared with them and because the other evidence was "lost".

76.     DEFENDANTS had probable cause to arrest the PLAINTIFF for an outstanding warrant but not on the false charges of resisting arrest.

77.     After getting his head kicked in, PLAINTIFF is having trouble sleeping, concentrating, focusing, paying attention and has frequent headaches.

Complaint for Damages

78.    As a result of the excessive beating, PLAINTIFF went to the hospital, and in addition to the physical pain, PLAINTIFF has incurred financial loss in the form of past and future medical expenses associated with therapy and possible loss of brain functioning.

79.    As a result of this incident, PLAINTIFF has endured pain, suffering, emotional and mental distress stemming from the physical injuries.

**FIRST CLAIM FOR RELIEF –Fourteenth Amendment Claim of**

**Excessive Force**

**(42 USC 1983) – Against All Defendants**

80.    PLAINTIFF HARRIS re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

81.    DEFENDANTS touched HARRIS in an offensive manner without his consent with excessive force causing a significant injury to his face by purposefully punching and kicking him in his head and face, and this use of force was objectively unreasonable and not all have admitted the amount of force they used.

82.    The actions of the DEFENDANTS resulted in lacerations and bruises to HARRISs face and was intentional, willful, malicious, oppressive, excessive, and unnecessary force under any circumstance;

14

83. The DEFENDANTS acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and

84. The DEFENDANTS' actions caused harm to the PLAINTIFF that was foreseeable and in fact resulted in physical and emotional harm to the PLAINTIFF; and the DEFENDANTs are thereby liable for compensatory damages under 42 U.S.C. Section 1983;

85. There was no need to use any force in this instance, much alone the amount used;

86. The extent of the injury ranges from moderate to unknown, due to PLAINTIFF'S head being kicked at.

87. The DEFENDANT was in no way a threat.

88. The warnings given by the DEFENDANTS to comply were fake while this force was used.

89. HARRIS complied with the DEFENDANTS' commands as they yelled and beat him.

90. The DEFENDANTS wrote false police reports to justify their unreasonable use of force.

91. PLAINTIFF further claims all of PLAINTIFF's attorney's fees and

15

costs incurred and to be incurred in PLAINTIFF's presenting, maintaining, and prosecuting this action under 42 U.S.C, 1988;

92. The action of the DEFENDANT was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT.

93. PLAINTIFF seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries.

94. PLAINTIFF also seeks punitive damages, costs, and attorney's fees under this claim.


## SECOND CLAIM FOR RELIEF –

## Violation of 14th Amendment – Failure to Intervene

## (42 USC 1983) – Against All Defendants

95. The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

16

96.   The DEPUTY DEFENDANTS observed or had reason to know that PLAINTIFF was being beaten by fellow officers without probable cause and for no reason after PLAINTIFF submitted to authority;

97.   The DEPUTY DEFENDANTS had a reasonable opportunity to intervene to the prevent attack from occurring from fellow officers but decided to simply watch the events, partake in the attack, and write false police reports;

98.   In failing to intervene, the DEPUTY DEFENDANTS were deliberately indifferent to substantial risk of harm to Plaintiff; and

99.   The DEPUTY DEFENDANTS' deliberate indifference to substantial risk of harm was risk that caused the Plaintiff harm in being beaten.

100.  The Plaintiff re-alleges and incorporates paragraphs 91-94 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.


**THIRD CLAIM FOR RELIEF –**

**Violation of 4th Amendment – Malicious Prosecution/Withholding or Destruction of Exculpatory Evidence**

**(42 USC 1983) – Against All DEFENDANTS**

101. The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

102. The prior criminal proceeding, commenced by or at the direction of the malicious prosecution defendants, was (1) pursued to legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice.

103. The DEFENDANTS filed arrested and had charges filed on HARRIS with malice and without probable cause because he never resisted arrest and was in fact beat up and DEFENDANTS did so for the purpose of denying HARRIS the right to be free from excessive use of force by the government and to be free from having falsified evidence being used against him to ensure his captivity.

104. The subsequent criminal prosecution was the result of wrongful conduct by the Defendants that violated his Fourth Amendment rights, i.e., the drafting and submission of false and misleading police reports.

105. DEFENDANTS procured the bogus criminal prosecution of HARRIS on bogus charges of violation of Cal. Penal Code § 148(a)(1) (resisting / obstructing / delaying a peace officer engaged in the lawful performance of his duties.)

Complaint for Damages

106.  DEFENDANTS knew that HARRIS had not committed a violation of Cal. Penal Code § 148(a)(1).

107.  DEFENDANTS conspired to author false, misleading, and inaccurate police reports, did so author said false reports, and conspired among each other to falsely and maliciously accuse HARRIS of various acts to show he violated PC 148(a)(1).

108.  Said police reports authored by DEFENDANTS contained material misrepresentations of facts and material omission of facts, described above, upon which the San Bernardino County District Attorney's Office relied, in large part, in deciding to file and to maintain the criminal prosecution of HARRIS for violation of Cal. Penal Code § 148(a)(1.)

109.  The criminal action against HARRIS was terminated in his favor, in a manner inconsistent with guilt based on actual evidence being turned over to the District Attorney, after which they dismissed charges at a pre-trial stage.

110.  None of said DEFENDANTS had probable cause to believe that HARRIS committed the crime of PC 148(a)(1).

111.  Said criminal action was procured by said defendants with malice, and said malicious criminal prosecution violated the plaintiff's

19

constitutional rights under the Fourth Amendment to the United States Constitution.

112.  As a direct and proximate result of the actions of DEFENDNATS, as complained of herein, plaintiff: 1) was substantially physically, mentally and emotionally injured, 2) incurred medical and psychological costs, bills and expenses, 3) lost the use and possession of his real and personal property and 4) incurred other special and general damages and expenses, including attorney's fees and associated costs; all in an amount to be proven at trial.

113.  The Plaintiff re-alleges and incorporates paragraphs 91-94 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

//

## PRAYER FOR RELIEF

WHEREFORE, the PLAINTIFF HARRIS demands judgment against every DEFENDANT individually and joints as DEFENDANTS and prays for relief as follows:

1.) Compensatory damages in an amount according to proof, which is fair, just and reasonable;

2.) Punitive and exemplary damages under federal and California law, in an amount according to proof and in an amount which is fair, just, and reasonable against each individual DEFENDANT as authorized by law.

3.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C 1983 and 1988; California Code of Civil 1021.5; and as otherwise may be allowed by California and/or Federal law; and

4.) For such other and further relief as the Court deems just and proper.

Dated: March 24, 2023

_____

Steven Parnell Weaver

ATTORNEY FOR PLAINTIFF

DEMAND FOR JURY TRIAL

The PLAINTIFF hereby demands a jury trial on each and every count.

Dated: March 24, 2023

_____

Steven Parnell Weaver

ATTORNEY FOR PLAINTIFF

Complaint for Damages